IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 28, 2005

## THERESA ANN WALTON v. STEVEN RAY WALTON

**An Appeal from the Chancery Court for Hardeman County**
**No. 13244      Dewey Whitenton, Chancellor**

---

**No. W2004-02474-COA-R3-CV - Filed August 10, 2005**

---

This is an appeal of a modification of alimony. The parties were divorced in February 2003. In the decree, the trial court awarded the wife rehabilitative alimony for eighteen months, but reserved jurisdiction to evaluate and review the award at the end of the eighteen-month period based on competent medical proof, noting that the wife was expected to pursue disability benefits during that time. During the interim, the wife's second application for Social Security disability benefits was denied on the grounds that she had not worked long enough to qualify for such benefits. Over a year after entry of the divorce decree, the wife filed a motion for the trial court to review the alimony award. The trial court conducted a hearing and the wife entered into evidence medical proof that she could not be rehabilitated. The trial court did not require the wife to show a material change in circumstances, explaining that it had mistakenly classified the original award as being "rehabilitative." Therefore, based on the additional proof, the trial court reduced the monthly amount and designated the award as alimony *in futuro*. The husband now appeals, arguing that the wife was required to show a substantial and material change in circumstances to warrant a modification of the original rehabilitative alimony award. We affirm, finding that the trial court retained jurisdiction to hear the medical proof and did not err in changing the award to alimony *in futuro*.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Charles M. Cary, Bolivar, Tennessee, for the appellant, Steven Ray Walton.

T. Tarry Beasley, II, Memphis, Tennessee, for the appellee, Theresa Ann Walton.

**OPINION**

Plaintiff/Appellee Theresa Ann Walton ("Wife") and Defendant/Appellant Steven Ray Walton ("Husband") were married for twenty-nine (29) years. In April 1993, during the marriage, Wife suffered a left-hemisphere stroke which adversely affected her speech and cognitive abilities.

On November 17, 2000, Wife filed a petition for divorce in the trial court, and Husband filed a counterclaim for divorce. In April 2002, Wife's application for Social Security disability benefits was denied, on the basis that she had not worked long enough to qualify for such benefits. On January 22, 2003, the case went to trial. The appellate record does not include a transcript of those proceedings.

On February 12, 2003, the trial court entered an order entitled "Final Decree of Divorce." The order declared the parties divorced, divided their personal property, and awarded Wife a portion of Husband's Federal Express Corporation retirement savings plan. It also included the following provision regarding alimony:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that [Wife] is awarded rehabilitative alimony of $2,000.00 per month for a period of 18 months beginning February 1, 2003, which shall be paid directly to [Wife], with an evaluation and review of the rehabilitative alimony by the Court based on competent medical proof at the end of that time.
>
> If prior to that time [Wife] is awarded disability benefits by the Social Security Administration, which the Court expects her to vigorously pursue then the monthly amount awarded by the Social Security Administration is to be deducted from the monthly rehabilitative alimony.

Thus, the trial court awarded Wife rehabilitative alimony in the amount of $2,000 per month, which award was to be evaluated after eighteen (18) months "based on competent medical proof at the end of that time." The trial court emphasized its expectation that Wife would "vigorously pursue" Social Security disability benefits during the interim.

Over one year later, on February 25, 2004, Wife filed a motion entitled "Plaintiff's Motion to Review Previous Ruling Pursuant to Instruction of Court & for Clarification of Award." The motion requested "a review of [the trial court's] previous ruling as to the award of rehabilitative alimony pursuant to the Final Decree of Divorce entered on February 12, 2003." On March 31, 2004, Husband filed a response to Wife's motion, arguing that the trial court had no jurisdiction to extend or modify the alimony award set out in the decree of divorce, absent an unforeseen material change in circumstances. Because there had been no such change in circumstances since the trial in this case, Husband argued, the trial court could not extend or modify the initial award of rehabilitative alimony.

On April 5, 2004, the trial court held a hearing on Wife's motion. The appellate record also does not include a transcript of that hearing. On April 20, 2004, the trial court entered an order continuing its consideration of Wife's motion until June 1, 2004. The order stated that Wife's "motion to continue the rehabilitative alimony after July 2004 and to reduce the rehabilitative alimony to $572.00 per month effective July 2004 shall be continued until June 1, 2004 at which time [Wife] shall submit competent medical proof and proof of her denial of Social Security Disability Benefits." Also on April 20, 2004, Wife received a denial of her second application for Social Security disability benefits; as with the first one, this denial was on the basis that she had not worked long enough to qualify. The denial letter specifically stated that the Social Security Administration did not determine whether Wife was disabled. On June 3, 2004, the trial court entered an order continuing the June 1, 2004 hearing until August 23, 2004.

On August 23, 2004, the trial court held a hearing. No witnesses testified at the hearing. Wife argued that she was unable to work and that Husband should be required to pay alimony *in futuro* in the amount of $550 per month.[1] In support of her claim, Wife submitted the deposition testimony of Vickie R. Brewer, a psychologist ("Dr. Brewer"). Counsel for Husband argued that the trial court was without jurisdiction to extend or modify the rehabilitative alimony award in any respect unless Wife could show a material change in circumstances that was unknown or unforeseeable at the time the divorce case was tried on January 22, 2003, citing ***Perry v. Perry***, 114 S.W.3d 465 (Tenn. 2003). He further argued that, because Wife's impairments flowed from the stroke she suffered in 1993, her resulting disability was foreseeable when the divorce case was tried in January 2003. Therefore, he claimed, Wife could not show an unforeseeable change in circumstances that would warrant the modification in alimony Wife had requested.

The trial court heard the arguments of counsel and then took a recess to read and consider Dr. Brewer's deposition and Wife's medical proof. Dr. Brewer evaluated Wife on May 14, 2004, and submitted a written report of her evaluation, which was attached as an exhibit to her deposition. Also attached as an exhibit to Dr. Brewer's deposition was a vocational assessment done on March 2, 2004 by Dr. Greg Cates, a vocational expert, and two evaluations by Dr. Michael Whelan, a psychologist, performed on January 11, 2003 and February 22, 2003.

The reports indicate that Wife was born in 1954, and was approximately 50 years old on the date of the hearing in the trial court below. She dropped out of school in the eleventh grade because of pregnancy, and has two grown children. During the marriage, she was a housewife and did not work outside the home. In April 1993, for no apparent reason, Wife suddenly began to talk unintelligibly. Eventually, tests were performed which showed she had suffered a stroke which affected the portion of the brain that controls expressive language, receptive language, mathematical calculations, right/left orientation, the ability to organize thoughts and plan ahead, and memory. Because of Wife's difficulty in expressing herself and in understanding Dr. Brewer's questions, Dr. Brewer obtained her history from Wife's sister-in-law, who brought her to see Dr. Brewer.

---

[1]At the hearing, Wife's attorney told the trial court that Wife expected to qualify for SSI benefits, but in order to do so, she could have no more than $550 per month in income from any other source.

In her evaluation, Dr. Brewer found that Wife's language was very disfluent; she spoke with a monotone voice, used few words, and had great difficulty finding the correct word to use. She used nonsense words, such as calling a calendar a cantaloupe. She was unable to repeat three words that had been given to her to recall. When asked to write a sentence, Wife was confused and repeatedly asked Dr. Brewer, "What is a sentence?" She wrote a word or two, but was unable to write a sentence. She suffered from some dementia, and was unable to perform simple tasks, such as pointing to a yellow square among objects of different colors and shapes. Overall, Dr. Brewer found Wife to be severely and permanently impaired, to a reasonable degree of medical certainty. Wife's prognosis was poor, with the likelihood that her condition would worsen. Since Dr. Brewer did not evaluate Wife until May 2004, she was unable to state what changes had occurred in Wife since the trial in January 22, 2003. In her report, Dr. Brewer stated that a person's improvement from a stroke usually continues up to about one year, and that "[l]ittle or no improvement is typically seen after that period of time."

After reviewing the medical proof, the trial court was persuaded that Wife could not be rehabilitated and that she was entitled to $550 per month in alimony *in futuro*. The trial court explained that it had made a "mistake" in initially calling the alimony awarded to Wife "rehabilitative" alimony:

> The Court may have been in error in calling the alimony rehabilitative in the decree that was entered after the hearing on January 22, 2003. The Court said, quote, "rehabilitative" end quote, for 18 months with an evaluation and review based on competent medical proof.
> It is apparent now, based upon the medical proof before the Court, that Ms. Walton is not going to improve, and that her condition is such that she will not ever be better, but will continue to get worse over time; and that the symptoms of dementia will become more apparent over time.
> The Court finds that it cannot terminate alimony. The equities and justice of the situation compel the Court to order that she continue to receive $550 per month alimony, regardless of the technical term that is used to describe it. The mistake of the Court in calling it rehabilitative should not be used to punish Mrs. Walton for denying to her the spousal support that she should receive.

On September 13, 2004, the trial court entered an order incorporating its oral ruling. From this order, Husband now appeals.

On appeal, Husband makes the same argument he made in the trial court, that the trial court was without jurisdiction to modify the rehabilitative alimony provision in the final decree of divorce, absent a material change of circumstances that was unknown or unforeseeable at the time of the trial in the divorce action. A trial court's decision to modify its original alimony award is reviewed for an abuse of discretion. *Perry*, 114 S.W.3d at 466-67. Such discretion is abused when the trial court "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *Id.* at 467 (quotations omitted). The trial court's

findings of fact are presumed to be correct, unless the evidence preponderates otherwise. Conclusions of law, however, such as whether the trial court applied the correct legal standard, are reviewed *de novo*, with no presumption of correctness. ***Id.***; ***Kilby v. Kilby***, No. 03A01-9712-CH-00549, 1999 WL 76065, at \*2-\*3 (Tenn. Ct. App. Jan. 28, 1999).

In support of his position, Husband relies on ***Perry v. Perry***, *supra*. In ***Perry***, the trial court entered a final decree of divorce on November 16, 1998. The decree included a provision that the husband was to pay the wife rehabilitative alimony of $700 per month through December 31, 2000. The trial court expressly designated the award as "temporary," and ordered the parties to return to court prior to December 31, 2000, to allow the court to determine whether the alimony award should be continued. The trial court listed a number of factors that would be considered in making that determination, including the wife's needs, whether she had returned to school, her grades, and other relevant factors. ***Perry***, 114 S.W.3d at 466. Two years later, on November 3, 2000, the wife filed a petition to modify the final decree to continue the alimony payments. On December 20, 2000, the husband filed a petition requesting termination of the alimony previously ordered, reasoning that he had completed his obligation set out in the original order to pay alimony through December 31, 2000. After a hearing on the matter, the trial court entered an order continuing the wife's award of rehabilitative alimony for three additional years but reducing the amount of the monthly payments. ***Id.*** Since the original award had been termed "temporary," the trial court did not require that the wife show a material change in circumstances since the date of the original decree. The husband appealed that determination, and the court of appeals affirmed the trial court in a split decision. ***See Perry v. Perry***, No. W2001-01350-COA-R3-CV, 2002 WL 1751407 (Tenn. Ct. App. Mar. 21, 2002), *rev'd*, 114 S.W.3d 465 (Tenn. 2003).

The husband appealed to the Tennessee Supreme Court, which reversed the decision of the court of appeals. ***Perry***, 114 S.W.3d at 469. The Supreme Court recognized that, in its original divorce decree, the trial court had designated the alimony provision as "temporary," and had ordered the parties to return to court before the end of the two-year period. The Court noted that this "novel approach" to deciding the duration of such an award was contrived because of the trial judge's uncertainty about the wife's stated intent to return to school. The Supreme Court held, however, that regardless of whether the initial rehabilitative alimony award is designated as "temporary" or "final," Tennessee Code Annotated § 36-5-101(d)(2) requires "a showing of substantial and material change in circumstances" in order to modify any award of rehabilitative alimony. That statute provides:

> . . . An award of rehabilitative, temporary support and maintenance shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, ***upon a showing of substantial and material change in circumstances.***

Tenn. Code Ann. § 36-5-101(d)(2) (2001) (emphasis added). The Supreme Court determined that rehabilitative alimony is, by definition, "temporary and open-ended." ***Perry***, 114 S.W.3d at 468. Thus, the trial court's attempt to reserve jurisdiction over the award for a finite period of time did

not affect the statutory requirement that a change in circumstances be shown in order to modify the award. The Court explained:

> We decline to hold that the "temporary" nature of the trial court's award of rehabilitative alimony requires less than a finding of a substantial and material change in circumstances. All awards of rehabilitative alimony are, by definition, temporary and open-ended. These awards provide alimony for a limited period of time and are subject to modification. Tennessee Code Annotated section 36-5-101(d)(2) specifically states that the award remains in the control of the trial court for its duration. An award of rehabilitative alimony that attempts to reserve the right to modify the award is an award that may be "increased, decreased, terminated, extended, or otherwise modified." Tenn. Code Ann. § 36-5-101(d)(2) (1996 & Supp. 2000). Any such modification requires a "substantial and material change in circumstances."

*Id.* Accordingly, the Court remanded the case to the trial court for further proceedings.

Relying on *Perry*, Husband argues that the trial court did not have jurisdiction to correct its "mistake" and convert the award of rehabilitative alimony to an award of alimony *in futuro*, absent a showing of an unforeseen change in circumstances. Even if Wife's condition has worsened since the trial on January 22, 2003, Husband argues, any deterioration was foreseeable and would not constitute a material change in circumstances. In the absence of a substantial and material change in circumstances, he maintains, the trial court was without authority to extend alimony past the eighteen-month period set forth in the final decree of divorce.

Wife argues that the trial court's use of the term "rehabilitative" alimony in the January 22, 2003 order was "unfortunate," but contends that the trial court retained the jurisdiction to continue or change the nature of the award under the circumstances of this case. Wife contends that the undisputed proof shows that she is permanently disabled and cannot be rehabilitated, and shows that she was disabled at the time of the January 2003 trial.

The appellate record in this case is sparse indeed. As noted above, we have no transcript of any proceedings prior to the August 23, 2004 hearing. In addition, in designating the record on appeal, the parties included no portion of the technical record prior to the February 12, 2003 order. Thus, we do not even have the parties' original complaint for divorce in the record on appeal.

Husband appears to contend that the February 12, 2003 order was a final order, and that if Wife disagreed with the characterization of the alimony award as "rehabilitative," she should have appealed at that point. Indeed, the order is titled "Final Decree of Divorce." Clearly, however, the trial court did not view it as a final order, and believed that it had retained jurisdiction to hear proof

regarding Wife's medical condition and to award alimony *in futuro*.[2]  Without the pleadings, and in particular the complaint and any counterclaim, it is difficult for this Court to know what the claims were and whether all claims were disposed of in the order, making it a final and appealable order. "When the record is incomplete, or does not contain the proceeding relevant to an issue . . . this Court must conclusively presume that the ruling of the trial court was correct in all particulars." **State v. Gibson**, 973 S.W.2d 231, 244 (Tenn. Crim. App. 1997); **see also Humphrey v. Humphrey**, No. 01-A01-9802-CV-0010, 1999 WL 42318, at *2 (Tenn. Ct. App. July 1, 1999); **Varcarella v. Varcarella**, 49 S.W.3d 307, 315 (Tenn. Ct. App. 2001).

More importantly, the language used in the final decree of divorce indicates that the trial court had not closed the proof on Wife's condition and had not yet determined the nature of the alimony to be awarded.[3]  In **Perry**, the trial court clearly had heard all of the proof on whether the wife was capable of being rehabilitated and had in fact determined that she could be rehabilitated at the time it entered the order.  The trial court indicated that, at the end of the two-year period of rehabilitative alimony, it would hear proof on circumstances since the original decree, such as the wife's return to school and her progress and grades at school, to determine whether the rehabilitative alimony should be continued for a longer period of time.  **Perry**, 114 S.W.3d at 466.  Under these circumstances, where the trial court makes a finding of fact that a spouse is capable of being rehabilitated, the **Perry** Court held that the award could not be extended or modified absent a substantial and material change in circumstances.  **Id.** at 468.

In contrast, in the case at bar, the trial court did not indicate that it would hear proof on what had transpired since the February 2003 order.  Rather, the February 12, 2003 order shows that the trial court had not heard all of the proof needed to make a determination on Wife's ability to be rehabilitated.  The order states that it expected to hear "competent medical proof" at the end of the eighteen-month period.  Moreover, although the order uses the term "rehabilitative" alimony, the order indicates that the trial court in fact considered Wife to be disabled and unable to work.  The trial court's order states that it "expects [Wife] to vigorously pursue" Social Security disability benefits; the court presumably would not urge Wife to apply for such benefits if it did not believe her to be disabled.  It is unclear whether the trial court chose to wait a period of time before hearing the medical proof in order to see if Wife would be able to secure disability benefits or for another reason.  Regardless, in contrast to **Perry**, it is clear that the language in the February 12, 2003 order does not reflect a finding that Wife was capable of being rehabilitated or that the trial court had even purported to resolve that issue.

---

[2]Although it is not often done, the trial court may, in its discretion, declare the parties divorced and reserve the issue of alimony to be decided at a later time.  **See Robinette v. Robinette**, 726 S.W.2d 524, 525 (Tenn. Ct. App. 1986). It has been recognized, however, that reserving the issue of alimony should be done "sparingly" and only "in unique factual situations."  See **Perry**, 2002 WL 1751407, at *6 (Farmer, J., concurring in part and dissenting in part).

[3]Though it cannot be determined without a transcript of the prior proceedings, it seems that no medical proof was presented prior to the entry of the final decree regarding whether Wife could be rehabilitated.

Therefore, the trial court retained jurisdiction to hear the medical proof on Wife's condition at a later date and make a determination on whether Wife was capable of being rehabilitated after considering that proof. The trial court did so, concluded that the proof overwhelmingly established that Wife could not be gainfully employed, and awarded a modest amount of alimony *in futuro*. In this situation, then, the trial court's February 12, 2003 order was not final as to the alimony award, because the issue of whether Wife was capable of being rehabilitated had not actually been adjudicated. Thus, unlike **Perry**, Wife was not required to show a material change in circumstances in order to obtain alimony *in futuro*. Therefore, Husband's argument that the trial court was without authority to award alimony *in futuro* must be rejected.

The medical proof finally supports the trial court's determination that Wife's circumstances merit an award of alimony *in futuro*. Husband does not appeal the amount of the award. Therefore, we affirm the trial court's award of alimony *in futuro*.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant Steven Ray Walton and his surety, for which execution may issue, if necessary.

_____

HOLLY M. KIRBY, JUDGE