IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Submitted on Briefs September 29, 2010

**SAUNDRA KAY (PACE) MASON**
**v.**
**JAMES E. MASON**

**Appeal from the General Sessions Court of Hardin County**
**No. 6611     Daniel L. Smith, Judge**

**No. W2010-00973-COA-R3-CV - Filed December 28, 2010**

This is a divorce case.  The parties had a long-term marriage, with one minor child born of the marriage.  The wife was designated as the primary residential parent, and the husband was required to pay alimony and child support. The wife appeals the amount of child support, the alimony award, and the trial court's denial of her request for attorney fees. The husband argues that he was entitled to relief from his *pendente lite* child support payments while he was out of work recovering from several surgeries. We reverse the trial court's holding on the husband's *pendente lite* child support, affirm the remainder of the trial court's holding, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court**
**Affirmed in Part; Reversed in Part; and Remanded.**

HOLLY M. KIRBY, J.,, delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and  J. STEVEN STAFFORD, J., joined.

Lloyd R. Tatum, Tatum & Tatum, Henderson, Tennessee, for Plaintiff/Appellant, Saundra Kay (Pace) Mason.

Dennis W. Plunk, Savannah, Tennessee, for Defendant/Appellee, James E. Mason.

# MEMORANDUM OPINION[1]

## FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellant Saundra Kaye (Pace) Mason ("Wife") and Defendant/Appellee James E. Mason ("Husband") were married in 1991. At the time the parties married, Wife had two small children from a prior relationship. After the parties married, they had one child, who was a minor at all pertinent times during the proceedings below.

Both Husband and Wife have a high school education and some post-secondary education. Husband has worked at Norfolk Southern Railway for over twenty years. Wife has worked at several jobs, including one at Wal-Mart and another as a part-time substitute teacher. In August 2008, Wife began working in an office position for $10 per hour, for no more than forty hours per week.

In May 2007, Wife filed a complaint for divorce in the trial court below, on the grounds of irreconcilable differences and inappropriate marital conduct. She claimed that Husband verbally and physically abused the children and engaged in substance abuse. She sought alimony *in futuro* child support and attorney fees *pendente lite*. In Husband's answer, he admitted inappropriate marital conduct, but denied abusing the children and denied substance abuse. Husband claimed that Wife also engaged in inappropriate marital conduct, and counterclaimed for divorce on that ground as well as irreconcilable differences. Wife requested a *pendente lite* hearing on child support and alimony.

In August 2007, Husband filed a motion asking the trial court to require Wife to contribute toward payment of the marital debts. In his motion, Husband said that he had been unemployed since April 2007, and that he had filed for Chapter 13 bankruptcy, listing marital debts exceeding $71,000. Husband claimed Wife had incurred substantial debt, and had voluntarily reduced her income by decreasing her work hours. Husband claimed that he was receiving only $1,140 monthly in unemployment benefits, and lived with his mother to

---

[1]**Rule 10. Memorandum Opinion**

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. R. App. P. 10.

reduce his expenses. He said that nearly all of his unemployment benefits were going to Wife to pay for the marital home and to support the minor child.

In November 2007, the trial judge entered a *pendente lite* order on the parenting and monetary issues. Wife's income was found to be $1,704.45 per month and Husband's income was found to be $3,666.66 per month. The trial court designated Wife as the primary residential parent and set Husband's *pendente lite* child support obligation at $690 per month. The trial court denied Wife's request that Husband's child support obligation be made retroactive to the date on which Wife's complaint for divorce was filed, in light of the mortgage payments he had been making on the marital home. As *pendente lite* alimony, Husband was required to continue to pay the two mortgages on the marital home, as well as the bankruptcy payment of $205 per month toward the marital debt. He was also required to make payments on the orthodontist bill of the parties' minor child in the amount of $100 per month.

In March 2008, Husband filed a motion seeking relief from his *pendente lite* support obligations on the grounds that he had undergone triple bypass surgery. Husband asserted that the surgery rendered him unable to work for three months. The record does not indicate any resolution of this motion prior to trial.

The trial was held on December 8, 2008. The primary evidence at trial was the testimony of Wife and of Husband.[2]

Wife testified at the outset. In her job at the time of trial, she said, she was working in office administration, earning $10 per hour, sometimes for less than forty hours per week. Wife said her average income was approximately $400 per week or $1401.40 per month. Wife testified as to various household expenses. She said that the marital home in which she and the minor child were living had several substantial structural and plumbing problems needing repair. She testified about expenses for the minor child's extracurricular activities and the family's numerous pets. Wife also described chronic health problems that she and the minor child suffered, which required ongoing medical attention and significant prescription medication. At one point, Wife testified that prescription medications for herself and the parties' minor child total $30 a month, but later said that the cost of the child's prescription medications "can run into the thousands" of dollars. She claimed that the only medical insurance available to her was through COBRA, at a cost of $557 per month. All told, Wife claimed total expenses of $2700 to $2750 per month.

---

[2]We limit our summary of the evidence to the testimony pertinent to the issues raised on appeal.

Wife testified that Husband engaged in excessive "discipline" of the children that consisted of beating them with a belt. She also asserted that he was verbally abusive toward her, and that he gambled and accumulated significant credit card debt to pay the gambling debts.

Husband testified as well. He stated that Wife specifically tasked him with disciplining the children. He claimed that he gambled only three or four times a year, and that Wife accompanied him on many of these gambling trips. Husband testified that his bankruptcy debt consisted primarily of credit card debt incurred for the benefit of the entire family. He testified that he was responsible for the $202 per month bankruptcy payment for four more years.

Husband was employed for over twenty years at Norfolk Southern Railroad, but had a period of unemployment for several months beginning in March 2007. During this time, his only income was unemployment insurance benefits in the amount of $1,140 per month. He returned to work at Norfolk Southern in September or October 2007, at a salary of $3355.20 per month, or approximately $43,000 per year. He continued to work at Norfolk Southern until he suffered a heart attack in February 2008. After that, he had shoulder surgery in September 2008 and treatment for carpal tunnel syndrome. Husband finally returned to work at Norfolk Southern in November 2008. He was out of work a total of approximately nine months.

Husband testified that he was living with his mother in Alabama to reduce his expenses. He said that he had no vehicle, and relied on his mother for transportation. During working hours, Husband said, he has use of a company vehicle because his work requires travel. However, he must rely on his mother and others for transportation to and from work and for personal travel. He is reimbursed for out-of-pocket expenses incurred while traveling for work. Husband detailed his living expenses, including his support obligations, that totaled $4047.54 per month. He said that his net income is $2811.81 per month. Husband testified that his mother had helped him financially, giving him a total of approximately $15,000. At the conclusion of Husband's testimony, the trial judge took the case under advisement.

The trial court issued a lengthy divorce decree in October 2009.[3] The divorce was granted to Wife on the grounds of Husband's inappropriate marital conduct. Wife was awarded the

---

[3]We note that the trial was conducted on December 8, 2008, and the trial court's decision was entered some ten months later, in October 2009. Tenn. Code Ann. § 20-9-506 states: "When any judge of any district tries a case without the intervention of a jury, whether the judge is required to reduce the judge's finding of facts to writing or not, the judge shall be required to render the judge's decision and have judgment entered in the case within sixty (60) days from the completion of the trial." The record gives no indication of the reason for the delay in issuing the trial court's decision.

marital residence, and was allocated the responsibility for paying the mortgages on the house. Wife was also awarded a portion of Husband's railroad retirement benefits. Husband retained the responsibility for making his Chapter 13 bankruptcy payments on the credit card debts.

Wife was designated as the primary residential parent. The trial court found that Husband was delinquent in his *pendente lite* child support payments in the amount of $5961, and also in payments toward the child's orthodontist bill.

The trial court calculated Husband's support payments. The trial court found that Wife's gross income was $1733 per month, and that Husband's gross income was $3634.80 per month. Based on these income figures, Husband's child support obligation was set at $524 per month. The parties were ordered to split the minor child's orthodontist bill. Wife was awarded rehabilitative alimony in the amount of $650 per month for a period of 28 months, beginning in April 2009. Each party was to pay his or her own attorney fees.

Wife subsequently filed a motion for a new trial or to amend the judgment, claiming various errors. The motion was denied. Wife now appeals.[4]

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Wife argues that the trial court erred in finding that Husband's income was $3634.80 per month for the purpose of calculating child support. On cross-appeal, Husband argues that the trial court should have reduced his *pendente lite* child support obligation during his period of disability, based on his reduced income during that time period. Wife asserts that the trial court's award of alimony was inadequate, and that the trial court erred in declining her request for an award of attorney fees.

On appeal, "[w]hen the trial court has set forth its factual findings in the record, we will presume the correctness of these findings so long as the evidence does not preponderate against them." ***Evans v. Evans***, No. M2002-02947-COA-R3-CV, 2004 WL 1882586 at *4 (Tenn. Ct. App. Aug. 23, 2004), *no perm. app.* (citing TENN R. APP. P. 13(d); ***Crabtree v. Crabtree***, 16 S.W.3d 356, 360 (Tenn. 2000)); *accord **Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.***, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005). We review the trial court's

---

[4]After Wife filed her notice of appeal, she moved to Georgia to live with a boyfriend. Consequently, the trial court entered an order modifying the parenting plan to designate Husband as the primary residential parent. After moving to Georgia, Wife was unemployed, so income was imputed to her pursuant to the child support guidelines.

conclusions of law *de novo* with no presumption of correctness. **Nashville Ford Tractor, Inc.**, 194 S.W.3d at 425.

Trial courts have broad discretion in determining the amount of alimony, if any, and the type of alimony to be awarded in view of the circumstances in a given case, and such an award will not be disturbed on appeal absent an abuse of that discretion. **See Broadbent v. Broadbent**, 211 S.W.3d 216, 219-20 (Tenn. 2006).

We review the trial court's decision on whether to award attorney fees under an abuse of discretion standard, as well. **Richardson**, 189 S.W.3d at 729; **Evans**, 2004 WL 1882586 at *17.

## ANALYSIS

### *Income for Child Support Purposes*

On appeal, Wife asserts that the evidence preponderates against the trial court's finding that Husband's income is $3,634.80 per month for purposes of calculating his child support obligation. Wife claims that Husband's company car allowance should be included in his gross income, which would bring his income to $4,150.47 per month and would increase his child support obligation commensurately.

Husband asserts that his company car allowance does not reduce his personal living expenses, and so should not be included in his gross income. Husband relies on his trial testimony explaining that he has use of the company vehicle only during his working hours with the railroad, and frequently only rides in the vehicle as a passenger. Husband testified that Railroad employees must find their own transportation to and from work, and when traveling, the Railroad's vehicle is available only for work purposes. Therefore, he maintains that the company car allowance should not be included in his income for child support purposes.

As in most areas of family law, Tennessee's legislature has enacted statutes governing the manner in which courts are to set child support payments. By statute, the child support guidelines promulgated by Tennessee's Department of Human Services are applied as a rebuttable presumption. T.C.A. § 36-5-101(e)(1)(A), (e)(2) (2005); **see** TENN. COMP. R. & REGS. § 1240-02-04.03 (2006), *et seq.* Under the income shares model used in the child support guidelines, the basic amount of child support corresponds to the parents' combined gross income and the number of children for whom support is being set. TENN. COMP. R. & REGS. § 11240-02-04-.03(6)(a)(1) (2006). Therefore, the threshold issue in determining child support is ascertaining the income earned by each parent.

The child support guidelines include extensive provisions outlining how gross income is to be determined for purposes of calculating child support. *See* TENN. COMP. R. & REGS. § 1240-02-04-.04(3)-(5) (2006). As a premise, the guidelines state that the "[g]ross income of each parent . . . shall include all income from any source. . . ." TENN. COMP. R. & REGS. § 1240-02-04-.04(3)(a)(1) (2006).

As pointed out by Wife, the guidelines specifically address fringe benefits such as the use of a company vehicle:

> 4. Fringe Benefits
>
> i) Fringe benefits for inclusion as income or "in-kind" remuneration received by a parent in the course of employment, or operation of a trade or business, shall be counted as income if they reduce personal living expenses.
> ii) Such fringe benefits might include, but are not limited to, company car, housing, or room and board.

TENN. COMP. R. & REGS. § 1240-02-04-.04(3)(a)(4.)(i-ii) (2006). Wife argues that, because the guidelines specifically identify a "company car" as a fringe benefit to be included as income, the trial court in this case erred by not including the vehicle furnished by the Railroad in Husband's income.

In this case, however, Husband testified that the Railroad's company car did not "reduce [his] personal living expenses," as specified in subsection (3)(a)(4.)(i), and consequently should not be included in his gross income. This testimony was implicitly credited by the trial court. According appropriate deference to the trial court's implicit finding that Husband's testimony was credible, we find that the evidence does not preponderate against the trial court's factual finding that Husband's income for child support purposes was $3,634.80 per month. Therefore, we find no error in the amount of child support set by the trial court.

### *Child Support During Period of Disability*

Husband contends that the trial court erred in determining his gross income for the purpose of calculating child support during the period of time in which he was disabled from working. In November 2007, the trial court ordered Husband to pay *pendente lite* child support in the amount of $690 per month, based on an income of $3,666.66 per month.

Beginning with Husband's heart attack in February 2008, he had substantial periods of time in which he was unable to work, totaling approximately nine months. During this period, Husband received only $1,140 in income per month. He returned to work at the Railroad in November 2008, a few weeks before trial. The trial court did not expressly address

Husband's motion for relief from the *pendente lite* child support in the divorce decree. However, it determined that Husband owed $5,961 in child support arrearages based on the *pendente lite* child support order. Therefore, it appears that the trial court implicitly denied Husband's motion for relief based on the period of time in which he was disabled and unable to work.

During the period of time in which Husband was disabled from working, he was subject only to a *pendente lite* order to pay child support; no final order had been entered in the case. Thus, the *pendente lite* order was interlocutory and subject to revision by the trial court at any time. **See State ex rel. Jackson v. Jackson**, No. M2006-00598-COA-R3-CV, 2008 WL 820495, at *4-5 (Tenn. Ct. App. Mar. 26, 2008), *perm. app. den.* Aug. 25, 2008). Consequently, the standards for modifying a final order of child support were inapplicable.[5]

"The fairness of a child support award depends on an accurate determination of both parents' gross income or ability to support." **Massey v. Casals**, 315 S.W.3d 788, 795 (Tenn. Ct. App. 2009).[6] In this case, for a significant period of time pending the trial, Husband was disabled and making less than half of the income on which the *pendente lite* child support was based. This undisputed fact appears to have been disregarded by the trial court. We must conclude that the trial court erred in calculating Husband's *pendente lite* child support arrearage without taking into account the approximately nine-month period of time in which his only income was unemployment benefits.

Therefore, we must conclude that the trial court erred in finding a child support arrearage of $5,961, based on an income of $3,666.66 per month. We reverse this finding and remand for a recalculation of the amount of *pendente lite* child support, taking into account the period of time in which Husband was disabled and earning a substantially reduced income.

### *Alimony*

Wife argues on appeal that the alimony awarded by the trial court was inadequate. Wife sought alimony of $716 per month for fifteen years. The trial court awarded her rehabilitative alimony of $650 per month for a period of twenty-eight months. Wife contends that the trial court erred in declining to award her the amount of alimony that she sought.

---

[5]Both parties cite cases and child support guideline provisions that pertain to the modification of a final child support order. These authorities are inapplicable.

[6]In her appellate brief, Wife cites **Massey v. Casals** as follows: "Setting child support lies within the discretion of the trial court. **Massey v. Casals**, 315 S.W.3d 788 (Tenn. App. 2009). Accordingly, child support decisions are reviewed under the deferential 'abuse of discretion' standard." This statement is wholly inaccurate and a misstatement of the holding in **Massey**.

In support of her argument, Wife points to her testimony that she had approximately $2800 per month in household expenses, but earned only about $1400 per month. Wife notes that the expenses she claimed do not include a vehicle or the cost of her health insurance. In setting alimony, the trial court is to consider the factors set forth in Tennessee Code Annotated § 36-5-121(i)(2005). As noted above, our standard of review of the trial court's decision on alimony is an abuse of discretion standard. *Broadbent*, 211 S.W.3d at 21-20.

On appeal, Wife rightly notes the considerable disparity in the parties' income, as well as the amount of her expenses. Although Wife received a far greater percentage of the marital assets, the total value of the marital estate was not large. Thus, some factors certainly weigh in favor of longer-term alimony in an increased amount.

However, in this case, the parties had considerably more marital debt than property, and most of the marital debt, except for the mortgage on the marital home, was awarded to Husband. At the time of trial, Wife was forty-two years old, young enough for rehabilitative efforts such as further education or training. While Wife cited some health challenges, she did not submit proof that any of her health problems prevented her from working or from receiving education or training to improve her earning capacity. In contrast, Husband's health issues kept him from working for approximately nine months while the divorce was pending.

While the question is somewhat close, we must recognize that the abuse of discretion standard is a highly deferential standard of review. From our review of the record as a whole, we cannot conclude that the trial court abused its discretion in determining Wife's alimony award.

### Wife's Attorney Fees

Wife asserts that the trial court erred by not awarding her attorney fees at the trial level. She asserts that "need is the primary factor," in determining whether a party is entitled to an award of attorney fees, citing *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996). Wife argues that "an award of attorney's fees is proper when one spouse is disadvantaged and does not have sufficient resources with which to pay those fees."

A decision on whether to award attorney fees at the trial level is within the discretion of the trial court. *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995). Reversal of the trial court's decision may occur "only when the trial court applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Richardson*, 183 S.W.3d at 729 (citing *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177,182 (Tenn. 2001)).

In this case, the trial court found that, "the parties have received sufficient assets in the division of the marital property for each party to pay their own respective attorneys." From our review of the record as a whole, we must conclude that the trial court's denial of Wife's request for attorney fees was not an abuse of discretion. Therefore, we affirm the trial court's decision on this issue.

## CONCLUSION

The decision of the trial court is affirmed in part, reversed in part, and the cause is remanded for proceedings consistent with this Opinion. Costs on appeal shall be taxed to the Appellant Saundra Kay (Pace) Mason and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE